907 P.2d 754

STATE of Hawai'i, Plaintiff–Appellee,

v.

Harold Uhane JIM, Defendant–Appellant.

STATE of Hawai'i, Plaintiff–Appellee,

v.

Patrick L. KAHAWAIOLA'A,
Defendant–Appellant.

Nos. 18404, 18405.

Supreme Court of Hawai'i.

Nov. 30, 1995.

Harold Uhane Jim, on the briefs, Kapaa, pro se.

Patrick L. Kahawaiola'a, on the briefs, Hilo, pro se.

Sandra L. Scott, Deputy Prosecuting Attorney, on the briefs, Hilo, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

In these consolidated appeals,[1] Defendants–Appellants Harold Uhane Jim and Patrick L. Kahawaiola'a (Appellants) appeal from the district court's judgment entered March 17, 1994, convicting them of the offense of criminal trespass in the second degree in violation of Hawai'i Revised Statutes (HRS) § 708–814(1)(b) (1993).[2] For the following reasons, we affirm.

## I. BACKGROUND

On October 9, 1993, the Appellants were arrested along with other persons for allegedly remaining on the premises of the Prince Kuhio Plaza after being requested to leave by an authorized agent of the Plaza. The Appellants, both of whom are native Hawaiians, were demonstrating against perceived violations of the Hawai'i Admission Act when they were arrested.[3] The Plaza is a shopping center that lies within the District of South Hilo in the County of Hawai'i and is specifically situated on land leased to the Homart Development Company by the Department of Hawaiian Home Lands (DHHL).

1. By order dated September 22, 1995, this court consolidated Nos. 18404 and 18405.

2. HRS § 708–814(1)(b) provides in pertinent part that "[a] person commits the offense of criminal trespass in the second degree if ... [t]he person enters or remains unlawfully in or upon commercial premises after reasonable warning or request to leave by the owner or lessee of the commercial premises or the owner's or lessee's authorized agent or police officer[.]" "Criminal trespass in the second degree is a petty misdemeanor." HRS § 708–814(2) (1993).

3. Each of the Appellants expressly waived the issue whether his arrest violated the constitutional right to free speech.

4. HRS § 701–106 provides in pertinent part:

   **Territorial applicability.** (1) Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by the person's own conduct or the conduct of another for which the person is legally accountable if:
   (a) Either the conduct or the result which is an element of the offense occurs *within this State* [.]
   ....

The district court denied the Appellants' motions to dismiss for lack of jurisdiction, concluding in pertinent part that:

1. The Admissions [sic] Act creating the State of [Hawai'i] established the jurisdictional extent of the State, specifying certain exceptions to its limits. The Admissions [sic] Act does not specify in this jurisdictional statement, a limitation for the lands subject to the management of the [DHHL]. The State of [Hawai'i] Constitution incorporates the language of the Admission Act in stating the jurisdictional extent of the State of [Hawai'i];

2. The Penal Code of the State of [Hawai'i] specifies the State of [Hawai'i] to include the land and water and the air space about the land and water with respect to which the State has *legislative jurisdiction.* ... [HRS § 701–106(5) (1993).[4]] Section 3 of the Hawaiian Home Commission Act [sic: presumably section 4 of the Admission Act] provides that the legislature of the State can change certain provisions of the Act while prohibiting change of other provisions of the Act without the consent of the Secretary of the Interior of the United States [5];

   (5) This State includes the land and water and the air space about the land and water with respect to which the State has *legislative jurisdiction.*
   (Emphases added.)

5. The Act of March 18, 1959, Pub.L. No. 86–3, 73 Stat. 4 (Admission Act, 1959, § 4), *reprinted in* 1 Haw.Rev.Stat. 90, 90–91 (1993) [hereafter, the Admission Act will be cited as reprinted in Haw. Rev.Stat.], provides in pertinent part:
   § 4. As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the [HHCA], 1920, as amended shall be adopted as a provision of the Constitution of said State ... subject to amendment or repeal only with the consent of the United States, and in no other manner: Provided, That (1) ... provisions relating to administration, and ... other provisions relating to the powers and duties of officers other than those charged with the administration of said Act, may be amended in the constitution, or in the manner required for State legislation, but the Hawaiian home-loan fund, the Hawaiian home-operating fund, and the Hawaiian home-development fund shall not be reduced or impaired by any such amendment ... and the encumbrances authorized to be placed on Hawaiian home lands by officers other than those charged with the administration of said

3. The Tenth Amendment of [sic] the United States Constitution reserves to the states the right to exercise power not inconsistent with those specified for the Federal government and Federal Court constitutional determinations;

4. The right and power of the State of [Hawai'i] to regulate the conduct of the citizens located within the State is called its Police Power;

. . . .

16. The [HHCA] does not specify a separate government, empower the [DHHL] to adjudicate criminal acts occurring within the boundaries of Hawaiian Homes land, to hire a police force, or to legislatively specify acts violative of the law; nor does any other legislation;

17. The [DHHL] is the sole arbiter as to what use the specified lands may be put consistent with the terms of the [HHCA];

18. The lands subject to the [DHHL] do *not* have the status of Indian reservations and are subject to the jurisdiction of this court for the purpose of adjudicating alleged violations of the criminal law.

(Emphasis added.) Jim and Kahawaiola'a subsequently pled no contest and were fined $125.00 each.[6] The court stayed execution of their sentences pending the instant appeal.

## II. *DISCUSSION*

The Appellants claim that 1) neither the county police departments nor any existing State entity possesses the authority to make arrests on Hawaiian home lands, and 2) the district court did not have jurisdiction to entertain the alleged criminal violations in this case.

### A.

The Appellants argue that the absence of express authorization under the HHCA prohibits State and county officials from making arrests on Hawaiian home lands until Congress agrees to an appropriate amendment of the HHCA under section 4 of the Admission Act. *See supra* note 5; U.S. Const. art. I, § 10 (prohibition on impairment of contracts). This argument assumes that express authorization is necessary before the laws of this State may be executed on Hawaiian home lands. Actually, because the Admission Act describes the boundaries of the new state of Hawai'i to include these lands, subject only to partial concurrent jurisdiction of the United States, an express statement that state laws *do not* apply on Hawaiian home lands would be necessary to support the Appellants' arguments.

The Hawaiian Homes Commission Act (HHCA)[7] specifies that "[t]he powers and duties of the governor and the board of land and natural resources, *in respect to lands of the State,* shall not extend to lands having the status of Hawaiian home lands, except as specifically provided in this title." 1 Haw.Rev.Stat. 191, 208 (HHCA § 206) (emphasis added). *See, e.g.,* Attorney General's Opinion No. 75-3 (advising that the governor's power to set aside public lands by executive order does not extend to Hawaiian home lands); HRS § 26-15 (1993) (providing in pertinent part that "[t]he department [of land and natural resources] shall manage and administer the public lands of the State"). Although one of the governor's duties is to execute the laws, *see* Haw. Const. art. V, § 5 (1978),[8] a plain reading of HHCA § 206 dem-

---

Act, shall not be increased, except with the consent of the United States; (2) that any amendment to increase the benefits to lessees of Hawaiian home lands may be made ... but the qualifications of the lessees shall not be changed except with the consent of the United States; and (3) that all proceeds and income from the "available lands", as defined by said Act, shall be used only in carrying out the provisions of said Act.

6. Jim's fine was converted to 25 hours of community service.

7. *See* Act of July 9, 1921, c. 42, 42 Stat. 108 (codified as amended at 48 U.S.C. note prec. § 491 (1988) and Haw. Const. art. XII, ·§ 1), *reprinted in* 1 Haw.Rev.Stat. 191 (1993) [hereafter, the HHCA will be cited as reprinted in Haw. Rev.Stat.].

8. Article V, § 5 provides in pertinent part that "[t]he governor shall be responsible for the faithful execution of the laws." Prior to statehood, the Organic Act had established that "the governor shall be responsible for the faithful execution of the laws of the United States and the Territory

onstrates that executive power only "in respect to lands of the state, shall not extend to ... Hawaiian home lands[.]" In other words, the governor may not treat these lands, which have been set aside to fulfill the purposes of the HHCA, as any other lands held outright by the State: Hawaiian home lands are impressed with a trust whose co-trustees are the State of Hawai'i and the United States. As the trust corpus, these lands cannot serve purposes at odds with the trust purposes. Nevertheless, the limitation on executive power set out in HHCA § 206 was never intended to limit the police power of the State in the fashion envisioned by the Appellants, and they point to no authority to support their position.

■ Although the DHHL has had "exclusive control" over the management and disposition of Hawaiian home lands since Hawai'i became a state, see *Ahuna v. Department of Hawaiian Home Lands,* 64 Haw. 327, 338, 640 P.2d 1161, 1168 (1982),[9] the HHCA does not expressly authorize the DHHL or any other entity to execute the laws on Hawaiian home lands.

The [DHHL], headed by the Hawaiian Homes Commission, received *exclusive control* of the Hawaiian home lands by section 204 of the HHCA. The HHCA further stated: "The powers and duties of the governor and the board of land and natural resources, in respect to the lands of the State, shall not extend to lands having the status of Hawaiian home lands, except as specifically provided in this title." HHCA, § 206. We conclude from this history that the Hawaiian Homes Commission, which oversees the [DHHL], is the specific state entity obliged to implement the *fiduciary duty* under the HHCA on behalf of eligible native Hawaiians. In dealing with eligible native Hawaiians col-

lectively or individually, appellant must adhere to high fiduciary duties normally owed by a trustee to its beneficiaries.

*Ahuna,* 64 Haw. at 338, 640 P.2d at 1168 (emphases added). Notwithstanding the absence of any provision in the HHCA relating to the enforcement of the laws on Hawaiian home lands, we are not aware of, nor have the Appellants cited, any authority to contradict the general proposition that the HHCA and the Admission Act established a public trust for the welfare and rehabilitation of native Hawaiians. *See, e.g., Aged Hawaiians v. Hawaiian Homes Comm'n,* 78 Hawai'i 192, 209, 891 P.2d 279, 296 (1995) (citing *Ahuna,* 64 Haw. at 336, 640 P.2d at 1167).

The United States Court of Appeals for the Ninth Circuit, in *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 588 F.2d 1216 (9th Cir.1978), acknowledged that "the underlying purpose of the statute has been questioned," but further acknowledged that the HHCA "was ostensibly designed to rehabilitate the indigenous Hawaiians by facilitating their access to farm and homestead lands." *Id.* at 1218 (citation omitted). *See also* HHCA § 101 ("Purpose" clause, enacted by the State legislature in 1990 subject to the consent of Congress); 1 Haw.Rev.Stat. 192–93 (1993); Haw. Const. art. XII, § 2 (1978).[10] Therefore, the limitation of the governor's powers under HHCA § 206 must be read in light of the Act's recognized objectives.

The exercise of the State's inherent police power does not necessarily conflict with the responsibility to manage and dispose of these trust lands. Consequently, we reject the Appellants' claim that the contract clause, *see* U.S. Const. art. I, § 10 ("No State shall ... pass any Law impairing the Obligation of Contracts"), prohibits execution of State laws

of Hawaii within the said territory[.]" Organic Act, § 67; Act of April 30, 1900, c. 339, 31 Stat. 141, *reprinted in* 1 Haw.Rev.Stat. 43, 66 (1993).

**9.** *See also* 1 Haw.Rev.Stat. 90, 90–91 (1993) (Admission Act, 1959, § 4) (adopting the HHCA as a part of the Hawai'i Constitution "[a]s a compact with the United States relating to the *management and disposition* of the Hawaiian home lands") (emphasis added); Haw. Const. art. XII, §§ 2–4 (1978).

**10.** Article XII, § 2 of the Hawai'i Constitution provides that, "[t]he State and its people do further agree and declare that the spirit of the [HHCA] looking to the continuance of the Hawaiian homes projects *for the further rehabilitation of the Hawaiian race* shall be faithfully carried out." (Emphasis added.)

on Hawaiian home lands merely because the United States Congress has not expressed its consent to the exercise of such enforcement power. Absent a demonstrable intent to restrict the government's authority to enforce State and county (formerly territorial) criminal laws on Hawaiian home lands, we are unwilling to hold that HHCA § 206 precludes the enforcement of such laws.

### B.

The Appellants' argument that the district court lacked jurisdiction over the instant prosecution is similarly without merit.

 Although not *exclusively* held, *see* 1 Haw.Rev.Stat. 229 (1993) (HHCA § 223),[11] the State does possess legislative jurisdiction with respect to Hawaiian home lands. Accordingly, these lands are "within this State" for the purpose of determining the territorial applicability of the criminal law. *See* HRS §§ 701–106(1)(a) & (5), *supra* note 4. We are not aware of any provision in the HHCA or its legislative history that indicates an intent to exempt Hawaiian home lands from the application of criminal laws. *See* discussion *supra* section II.A. In addition, HRS § 604–8 (1993) provides in pertinent part:

> **Criminal, misdemeanors, generally.** District courts shall have jurisdiction of, and their criminal jurisdiction is limited to, criminal offenses punishable by fine, or by imprisonment not exceeding one year whether with or without fine. They shall not have jurisdiction over any offense for which the accused cannot be held to answer unless on a presentment or indictment of a grand jury.

As a petty misdemeanor, second degree criminal trespass under HRS § 708–814(1)(b) is punishable by a term of imprisonment not to exceed thirty days, *see* HRS § 706–663 (1993), and/or a fine not to exceed $1000. HRS § 706–640 (1993). Thus, we hold that the district court properly exercised jurisdiction over the Appellants in the instant case.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment convicting the Appellants of criminal trespass in the second degree.

---

**11.** HHCA § 223 provides that "[t]he Congress of the United States reserves the right to alter, amend, or repeal the provisions of this title." *See also* Admission Act, § 4, *supra* note 5.