952 P.2d 379

**Arthur F. KEPOʻO, Plaintiff–Appellee,**

v.

**Kali WATSON,[1] Chairperson, Hawaiian Homes Commission, Department of Hawaiian Home Lands, State of Hawaiʻi, Defendants–Appellees,**

and

**Kawaihae Cogeneration Partners and Waimana Enterprises, Inc., Intervenors–Defendants–Appellants;**

**Lillian K. DELA CRUZ, Plaintiff–Appellee,**

v.

**DEPARTMENT OF HAWAIIAN HOME LANDS, by Kali WATSON, in his capacity as chairman and director; Office of Environmental Quality Control by Brian J.J. Choy, in his capacity as director, Defendants–Appellees,**

and

**Kawaihae Cogeneration Partners and Waimana Enterprises, Inc., Intervenors–Defendants–Appellants;**

**Josephine L. TANIMOTO, as a resident and lessee of the Kawaihae Hawaiian Home Lands, Plaintiff–Appellee,**

v.

**DEPARTMENT OF HAWAIIAN HOME LANDS, by Kali WATSON, in his capacity as chairman and director; Office of Environmental Quality Control by Brian J.J. Choy, in his capacity as director, Defendants–Appellees,**

and

**Kawaihae Cogeneration Partners and Waimana Enterprises, Inc., Intervenors–Defendants–Appellants.**

**No. 18508.**

Supreme Court of Hawaiʻi.

Jan. 28, 1998.

---

1. Kali Watson succeeded Hoaliku L. Drake as chairperson of the Hawaiian Homes Commission during the pendency of this appeal. Pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Watson has been automatically substituted as a party in the instant case.

Sandra Pechter Schutte (Ivan M. Torigoe, with her on the brief, of Case & Lynch), Hilo, for Intervenors–Defendants–Appellants Kawaihae Cogeneration Partners and Waimana Enterprises, Inc.

Sonia Faust and Clayton Lee Crowell (George K.K. Kaeo, Honolulu, with them on the brief), Deputy Attorneys General, for Defendants–Appellees Kali Watson, Hawaiian Homes Commission, Department of Hawaiian Home Lands, and the State of Hawai'i.

Arthur F. Kepo'o, Plaintiff–Appellee, pro se, no brief filed.

Lillian K. Dela Cruz, Plaintiff–Appellee, pro se.

Josephine L. Tanimoto, Plaintiff–Appellee, pro se.

Patrick W. Hanifin (Roy A. Vitousek III, Kailua Kona, and Patricia J. McHenry, with him on the brief, of Cades Schutte Fleming & Wright), Honolulu, for Amici Curiae James Growney and Mauna Kea Homeowners' Association.

Before MOON, C.J., and KLEIN, LEVINSON and RAMIL, JJ., and NAKATANI, Circuit Judge, in place of NAKAYAMA, J., Recused.

RAMIL, Justice.

Intervenors–Defendants–Appellants Kawaihae Cogeneration Partners (KCP) and Waimana Enterprises, Inc. (Waimana) (collectively KCP/Waimana) filed an interlocutory appeal from the order granting partial summary judgment in favor of Plaintiffs–Appellees Arthur F. Kepo'o, Lillian K. Dela Cruz, and Josephine L. Tanimoto (collectively Plaintiffs). We affirm the circuit court's order. However, because this is an interlocutory appeal and factual determinations have not yet been made by the circuit court, the case must be remanded for further proceedings.

## I. BACKGROUND

In early 1993, Defendant–Appellee Department of Hawaiian Home Lands (DHHL) completed an environmental impact statement (EIS) for the Kawaihae Ten–Year Master Plan covering ten-thousand acres of Hawaiian home lands situated in Kawaihae, South Kohala, Hawai'i. The master plan included use of a portion of the lands for industrial purposes, including a power generating facility.

On December 2, 1993, DHHL leased a forty-acre parcel to Waimana. Subsequently, Waimana sublet a portion of the parcel to KCP, a partnership that included Waimana. KCP was to construct and operate a cogeneration power plant that would produce electricity, with heat as a by-product. The heat would be used for other industrial purposes, such as a desalinization plant, laundries, or an ice house.

KCP then prepared an environmental assessment (EA) for the power plant because, at the time, KCP believed that it was required to comply with HRS ch. 343. KCP prepared the EA in lieu of an EIS because: (1) DHHL had already prepared an EIS for the ten-thousand-acre parcel; and (2) KCP believed that all of the potential adverse impacts of the power plant could be mitigated. Hoaliku L. Drake, then-chairperson of the Hawaiian Homes Commission (HHC),[2] accepted KCP's EA and issued a negative declaration indicating that a full EIS was not required under HRS ch. 343.

---

**2.** The HHC is the executive board that heads DHHL. HRS § 26–17 (1993).

Plaintiffs filed three separate *pro se* actions against Drake, the HHC, DHHL, and the State of Hawaiʻi[3] (collectively State Defendants). Plaintiffs challenged the acceptance of the EA, the failure to prepare a full EIS for the power plant, and requested injunctive relief. KCP/Waimana was allowed to intervene, and all three actions were consolidated.

KCP/Waimana and State Defendants filed a joint motion for summary judgment, arguing that HRS ch. 343 does not apply to Hawaiian home lands and requesting a ruling to that effect. Dela Cruz filed a motion for summary judgment, later joined by the other plaintiffs, arguing that an EIS is required and requesting that the court order DHHL and KCP/Waimana to prepare one.

After a hearing on August 17, 1994, the circuit court granted partial summary judgment in favor of Plaintiffs on the specific issue of whether HRS ch. 343 applies to Hawaiian home lands. The court ruled:

1. HRS Chapter 343, the Hawaii environmental impact statement law, applies to Hawaiian Homes lands because such lands are State lands for purposes of Chapter 343.

2. The Hawaiian Homes Commission Act, as enacted by Congress as a federal enactment, does not preempt state law; thus, the doctrine of federal preemption does not preclude the application of the environmental impact statement requirements of HRS Chapter 343.

3. The requirements of HRS Chapter 343 are applicable to the cogeneration power plant and appurtenant facilities proposed to be located on DHHL lands situated at Kawaihae, South Kohala, Hawaii.

However, at the hearing, the circuit court indicated that it would probably be appropriate to certify its partial summary judgment order for interlocutory appeal.[4] Subsequently, KCP/Waimana filed a motion for leave to file an interlocutory appeal. The circuit court granted the motion and stated:

It is the finding of this Court that should the appellate court hold that Chapter 343, HRS is not applicable to Hawaiian Home Lands, which are the subject of this action, or that the Hawaiian Homes Commission Act preempts State law, including Chapter 343, HRS, Plaintiffs would have no basis for seeking the relief pursued, being the preparation of an environmental impact statement in accordance with Chapter 343, HRS, and the subject litigation would be speedily terminated. Accordingly, this Court finds that an interlocutory appeal is advisable for the speedy determination of this litigation pursuant to § 641–1, HRS.

KCP/Waimana then filed a notice of appeal.

## II. *DISCUSSION*

The central question posed by this case is whether the EIS requirements of HRS ch. 343 apply to Hawaiian home lands. In addressing this question, the parties and amici curiae raise a number of arguments that may be grouped into five sub-issues: (1) jurisdiction under HRS § 641–1; (2) the terms of KCP/Waimana's lease; (3) whether Hawaiian home lands constitute "state lands" under HRS ch. 343; (4) federal preemption; and (5) whether HRS ch. 343 conflicts with provi-

---

3. Dela Cruz and Tanimoto also named the Office of Environmental Quality Control (OEQC) and its director, Brian J.J. Choy, as defendants in their respective actions. However, OEQC and Choy filed motions to dismiss on the grounds that OEQC's only role is to make EAs and EISs available to the public and that OEQC is not involved in the acceptance of EAs or the decision to issue a negative declaration. The circuit court granted the motions on February 15 and 23, 1994. Plaintiffs have not challenged these orders on appeal.

4. HRS § 641–1(b) (1993) provides:

Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

sions of the Hawaiian Homes Commission Act (HHCA).

### A. *Jurisdiction Under HRS § 641–1*

■ State Defendants argue that it is unnecessary to address the substantive issues in this case because the appeal should be dismissed on jurisdictional grounds. They argue that KCP/Waimana have no standing to appeal because State Defendants did not move for or receive permission to file an interlocutory appeal under HRS § 641–1.

The argument raised by State Defendants is somewhat confusing. State Defendants do not explain why *their* failure to seek or receive permission from the circuit court would affect *KCP/Waimana's* right to file an interlocutory appeal. KCP/Waimana received permission to file an interlocutory appeal from the circuit court, the court found that an appeal would be advisable for the speedy termination of the litigation, and KCP/Waimana filed a notice of appeal. Thus, KCP/Waimana are the appellants in this case, and whether or not State Defendants requested or received permission to file their own appeal is irrelevant. It is also unclear why the conduct of State Defendants would have any effect on KCP/Waimana's standing to appeal. Regardless of State Defendants' conduct, KCP/Waimana have standing to appeal. "Generally, the requirements of standing [to appeal] are: (1) the person must first have been a party to the action; (2) the person seeking modification of the order or judgment must have had standing to oppose it in the trial court; and (3) such person must be aggrieved by the ruling," *i.e.*, the person must be "one who is affected or prejudiced by the appealable order." *Waikiki Malia*

*Hotel, Inc. v. Kinkai Properties, Ltd. Partnership*, 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993). In the present case, KCP/Waimana were intervenors-defendants, and therefore parties, in the action. They clearly had standing to oppose the summary judgment order in the circuit court inasmuch as the applicability of HRS ch. 343 would directly affect their power plant project. And they were aggrieved parties because, by applying HRS ch. 343 to Hawaiian home lands, the circuit court's order allowed the lawsuit to continue.

Therefore, there is no reason to dismiss this appeal based on standing or other jurisdictional issues under HRS § 641–1.[5]

### B. *The Terms of KCP/Waimana's Lease*

State Defendants, as well as amici curiae James Growney and Mauna Kea Homeowners' Association (collectively Amici), argue that this court should decide the present appeal based on the provisions of the KCP/Waimana lease. They argue that regardless of whether HRS ch. 343 applies to Hawaiian home lands as a general proposition, KCP/Waimana is contractually bound to comply with HRS ch. 343 under the terms of their lease. Thus, they argue, it is unnecessary to decide whether HRS ch. 343 generally applies to Hawaiian home lands. Because the interlocutory appeal was granted in order to address the general applicability of HRS ch. 343, they suggest that this court dismiss the appeal. In the alternative, State Defendants argue that the circuit court's ruling that HRS ch. 343 applies to the land at issue in this case should be affirmed, but based on the terms of the lease rather than the general applicability of HRS ch. 343 to Hawaiian home lands.

---

5. We also note that, during the hearing on KCP/Waimana's motion for leave to file an interlocutory appeal, State Defendants not only indicated that they had no objection to the motion but affirmatively supported it as well.

Although this argument is in many ways attractive, ultimately it is unsupported by the terms of the KCP/Waimana lease. State Defendants and Amici base their argument on article 2, section 7 of the lease:

> *Compliance with laws. The lessee will at all times during said term perform the requirements of: (i) all laws, ordinances, rules, regulations, administrative requirements and governmental environmental standards now or hereafter made by any governmental authority for the time being applicable to the premises or any improvements thereon or use thereof, hereinafter collectively called "Applicable Law",* (ii) all covenants, conditions and restrictions of record as of the date hereof applicable to the premises; (iii) covenants and conditions of all insurance policies at any time duly issued or enforced which are applicable to the conduct of the Lessee's business in or about the premises or any part thereof; and (iv) prudent management of all Hazardous Material handled by the Lessee on the premises; and will indemnify the Lessor against all actions, suits, damages and claims by whomsoever brought or made by reason of the nonobservance or nonperformance of said Applicable Law, covenants, conditions, restrictions and standards or requirements of this covenant. *Should the requirements imposed by any of said Applicable Law, covenants, conditions, restrictions and standards be inconsistent with each other, the Lessee shall comply with the most stringent requirements.*

(Emphases added.) It should be noted that this lease provision does not specifically require the lessee to comply with HRS ch. 343. Rather, it requires the lessee to comply with "all laws ... *applicable* to the premises." (Emphasis added.) If HRS ch. 343 constitutes "Applicable Law," then the lease contractually requires the lessee to comply with it. But it must still be decided whether HRS ch. 343 is *applicable* to the premises. Thus, the terms of the lease lead us back to the central issue in this case—whether HRS ch. 343 is *applicable* to Hawaiian home lands. In other words, examination of the terms of the lease merely begs the question.

State Defendants and Amici also argue that the "most stringent requirements" language quoted above requires the lessee to comply with HRS ch. 343. However, the "most stringent requirements" language also refers to the "Applicable Law." Therefore, the lease again leads us back to the question whether HRS ch. 343 is applicable to Hawaiian home lands. Moreover, the provision merely states that if there is a conflict between applicable law, covenants, conditions, restrictions, and standards, the most stringent of those requirements controls. The present case does not involve conflict between these requirements. Indeed, no other covenants, conditions, etc., are at issue in this case; instead, the central issue is determining what laws are applicable in the first place.

Therefore, this case cannot be decided based on the terms of the KCP/Waimana lease. The terms of the lease lead us back to the question whether HRS ch. 343 is applicable to Hawaiian home lands.

### C. Whether Hawaiian Home Lands Constitute "State Lands" Under HRS ch. 343

KCP/Waimana argue that HRS ch. 343 is not applicable to Hawaiian home lands because the statute does not specifically state that Hawaiian home lands are covered. Under HRS § 343-5(a) (1993), compliance with HRS ch. 343 is required for actions that:

(1) Propose the use of state or county lands or the use of state or county funds, other than funds to be used for feasibility or planning studies for possible future programs or projects which the agency has not approved, adopted, or funded, or funds to be used for the acquisition of unimproved real property; provided that the agency shall consider environmental factors and available alternatives in its feasibility or planning studies;

(2) Propose any use within any land classified as conservation district by the state land use commission under chapter 205;

(3) Propose any use within the shoreline area as defined in section 205A–41;

(4) Propose any use within any historic site as designated in the National Register or Hawaii Register as provided for in the Historic Preservation Act of 1966, Public Law 89–665, or chapter 6E;

(5) Propose any use within the Waikiki area of Oahu, the boundaries of which are delineated in the land use ordinance as amended, establishing the "Waikiki Special District";

(6) Propose any amendments to existing county general plans where such amendment would result in designations other than agriculture, conservation, or preservation, except actions proposing any new county general plan or amendments to any existing county general plans initiated by a county;

(7) Propose any reclassification of any land classified as conservation district by the state land use commission under chapter 205; and

(8) Propose the construction of new, or the expansion or modification of existing helicopter facilities within the State which by way of their activities may affect any land classified as conservation district by the state land use commission under chapter 205; the shoreline area as defined in section 205A–41; or, any historic site as designated in the National Register or Hawaii Register as provided in the Historic Preservation Act of 1966, Public Law 89–665, or chapter 6E; or until the statewide historic places inventory is completed, any historic site found by a field reconnaissance of the area affected by the helicopter facility and which is under consideration for placement on the National Register or the Hawaii Register of Historic Places.

KCP/Waimana argue that none of these categories apply to Hawaiian home lands. They admit that it could be argued that Hawaiian home lands are "state lands" under HRS § 343–5(a)(1). However, they argue that Hawaiian home lands are distinguishable from other state lands. KCP/Waimana note that Hawaiian home lands are trust, lands held by the State as trustee for Native Hawaiian beneficiaries. Thus, they argue, these lands should not be considered "state lands" subject to HRS ch. 343.

█ KCP/Waimana are correct that the State has assumed a trust obligation regarding Hawaiian home lands and must manage and dispose of these lands in a manner consistent with its fiduciary duty to the beneficiaries. *See Ahuna v. Department of Hawaiian Home Lands,* 64 Haw. 327, 337–38, 640 P.2d 1161, 1168 (1982). However, KCP/Waimana overlook the significant role of the State in relation to these lands.

Title to Hawaiian home lands is held by the State of Hawai'i. Section 5(b) of the Admission Act provides:

[T]he United States grants to the State of Hawaii, effective upon its admission into the Union, the United States' title to all public lands and other public property, and to all lands defined as "available lands" by section 203 of the Hawaiian Homes Commission Act, 1920, as amended, within the boundaries of the State of Hawaii, title to which is held by the United States immediately prior to its admission into the Union.

Admission Act of March 18, 1959, Pub.L. No. 86–3, § 5, 73 Stat. 4, *reprinted in,* 1 Haw. Rev.Stat. 90, 91 (1993) [hereinafter, the Admission Act will be cited as reprinted in the Hawai'i Revised Statutes]. Thus, the State acquired title to Hawaiian home lands upon entry into the Union. Furthermore, "management and disposition" of Hawaiian home lands is also the responsibility of the State. *See Ahuna,* 64 Haw. at 337, 640 P.2d at 1168. Although, in managing and disposing of the land, the State is bound by its fiduciary duty to the Native Hawaiian beneficiaries, the fact remains that both legal title and management responsibilities over the land are still in the hands of the State. Thus, it is not unreasonable to interpret the term "state

lands" in HRS § 343–5(a)(1) as including Hawaiian home lands. Hawaiian home lands are certainly unique "state lands," with special duties attached to them, but they are "state lands" nevertheless.

### D. *Federal Preemption*

■ KCP/Waimana argue that the HHCA[6] preempts HRS ch. 343 based on principles of federal preemption. Implicit in this argument is the assumption that the HHCA constitutes federal law and that HRS ch. 343 is preempted because it is a state statute.

KCP/Waimana's assumption is incorrect. While the HHCA was originally enacted by Congress as a federal statute, it was subsequently adopted as part of the Hawai'i Constitution. Haw. Const. art. XII, § 1. This was done pursuant to a compact with the United States entered into when Hawai'i was admitted into the Union. *See* Admission Act § 4, 1 Haw.Rev.Stat. at 90–91; Haw. Const. art. XII, §§ 2 & 3. Consequently, the HHCA is now part of the Hawai'i Constitution and any conflict between the HHCA and a state statute is a matter of state constitutional law.

The United States Court of Appeals for the Ninth Circuit adopted a similar interpretation in *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 588 F.2d 1216 (9th Cir.1978) [hereinafter *Keaukaha I* ], *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979):

> The Commission Act, as originally enacted, created certain benefits for native Hawaiians. It is clear, however, that for all practical purposes these benefits have lost their federal nature. Upon admission of Hawaii into the Union, the entire Commission Act program was turned over to the State of Hawaii. The United States conveyed its interest in the home lands (which are the subject of the Commission Act) to the state and these lands are now administered by state officials. The Commission Act itself was deleted from the United States Code and, at Congress' insistence, was adopted as a permanent fixture of the state's constitution. Thus, it is undisputable that the Commission Act program together with its rights and duties are, for all practical purposes, elements of Hawaiian law. In essence, this is an action brought against state officers to compel them to administer state lands in conformance with the state constitution. These facts make it clear that the rights plaintiffs seek to vindicate are state rights by nature. Even though the historical source of these rights was a federal statute, it is the clear state nature of these rights which governs our decision. We therefore conclude that the Commission Act claims do not arise under federal law.

*Id.* at 1226–27 (citations and footnote omitted) (emphases omitted). *See also Han v. United States Dep't of Justice,* 45 F.3d 333, 339 (9th Cir.1995).[7]

The HHCA is, therefore, a matter of state constitutional law and does not constitute federal law. Consequently, federal preemption principles do not apply to this case because there is no relevant "federal law" at issue.

---

**6.** Hawaiian Homes Commission Act of July 9, 1921, c. 42, 42 Stat. 108, *reprinted in* 1 Haw.Rev. Stat. 191 (1993) [hereinafter, the HHCA will be cited as reprinted in the Hawai'i Revised Statutes].

**7.** In *Keaukaha I,* the Ninth Circuit also held that there is no implied private cause of action based directly on the Admission Act. *Keaukaha I,* 588 F.2d at 1224. However, in *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 739 F.2d 1467 (9th Cir.1984) [hereinafter *Keaukaha II* ], the Ninth Circuit noted that, in *Keaukaha I,* it had not determined whether a private cause of action exists under 42 U.S.C. § 1983. *Keaukaha II,* 739 F.2d at 1469–70. The Ninth Circuit then went on to hold that a private cause of action does exist under section 1983 for deprivation of rights guaranteed under the Admission Act. *Id.* at 1472. It should be noted that *Keaukaha II* did not affect the holding in *Keaukaha I* that a violation of the HHCA arises under state law rather than federal law. On the contrary, the Ninth Circuit apparently reaffirmed its holding on that issue. *Id.* at 1469 ("[T]he Commission Act [is] now, by virtue of the Admission Act, a provision of the Hawaii state constitution."). Subsequent Ninth Circuit decisions confirm that this aspect of *Keaukaha I* remains valid authority. *See, e.g., Han,* 45 F.3d at 339 ("Claims under the Commission Act, which has been expressly incorporated in the Hawaii Constitution, arise exclusively under state law.").

Furthermore, as a practical matter, it makes no difference whether the HHCA should be considered a matter of federal law or state constitutional law. Either way, the HHCA would supersede a state statute such as HRS ch. 343. The real question is not the theoretical basis of the HHCA's authority but, rather, whether the HHCA conflicts with HRS ch. 343.

### E. Whether HRS ch. 343 Conflicts with the Hawaiian Homes Commission Act

■ KCP/Waimana and State Defendants [8] argue that HRS ch. 343 conflicts with the HHCA and that EIS requirements do not apply to Hawaiian home lands for that reason. Plaintiffs and Amici argue that there is no conflict between HRS ch. 343 and the HHCA, and that EIS requirements do apply to Hawaiian home lands.

This court addressed an analogous issue in *State v. Jim*, 80 Hawai'i 168, 907 P.2d 754 (1995). In *Jim*, the defendants were arrested at a shopping center situated on Hawaiian home land and were eventually convicted of criminal trespass in the second degree. *Id.* at 169, 907 P.2d at 755. The defendants argued that the HHCA prohibits State and county officials from executing the laws on Hawaiian home lands. *Id.* at 170, 907 P.2d at 756. Thus, the issue was essentially whether the Hawai'i Penal Code applies to Hawaiian home lands. In addressing this issue, we noted that section 206 of the HHCA specifies that "[t]he powers and duties of the governor and the board of land and natural resources, *in respect to lands of the State,* shall not extend to lands having the status of Hawaiian home lands, except as specifically provided by this title." *Id.* (quoting HHCA § 206, 1 Haw.Rev.Stat. at 208) (emphasis in original).

We further noted that "a plain reading of HHCA § 206 demonstrates that executive power *only in respect to lands* of the state, shall not extend to Hawaiian home lands." *Id.* at 170–71, 907 P.2d at 756–57 (internal quotation marks, brackets, and ellipses omitted) (emphasis added). We concluded that "the limitation on executive power set out in HHCA § 206 was never intended to limit the police power of the State in the fashion envisioned by the Appellants, and they point to no authority to support their position." *Id.* at 171, 907 P.2d at 757. Thus, under *Jim*, police power regulations apply to Hawaiian home lands, and executive officials may enforce them, as long as these regulations do not significantly affect the land.

■ Subsequently, Attorney General's Opinion No. 95–05 addressed the question whether state and federal endangered species laws, imposing civil and criminal penalties, apply to Hawaiian home lands. The Opinion concluded, based on *Jim*, that these laws also apply to Hawaiian home lands.[9]

■ The present case, like *Jim* and Attorney General's Opinion No. 95–05, involves regulations enacted pursuant to the state's police power. The police power "extends to the public safety, health, and welfare." *State v. Ewing*, 81 Hawai'i 156, 164, 914 P.2d 549, 557 (App.1996). *See also State v. Lee*, 55 Haw. 505, 513, 523 P.2d 315, 319 (1974). HRS ch. 343 involves EIS requirements and is therefore a type of environmental regulation. Clearly, environmental regulations are enacted for the purpose of protecting the public safety, health, and welfare. Consequently, the present case is similar to *Jim* in that HRS ch. 343, like the Hawai'i Penal Code, is a police power regulation. In fact, Attorney General's Opinion No. 95–05 extended the analysis in *Jim* to encompass the

---

8. It should be noted that the position of State Defendants in this case is rather complex. They first suggest that this court decide the case on jurisdictional grounds or based on the terms of the lease rather than addressing the general applicability of HRS ch. 343 to Hawaiian home lands. *See supra* part II.A. and B. But they further argue that, if this court chooses to address the general applicability of HRS ch. 343, the statute does not apply to Hawaiian home lands because it conflicts with the HHCA.

9. In the present decision, we cite a number of Attorney General's opinions dealing with Hawaiian home lands. It should be noted that Attorney General's opinions are highly instructive but are not binding upon this court. *See Zemis v. SCI Contractors, Inc.,* 80 Hawai'i 442, 449 n. 4, 911 P.2d 77, 84 n. 4 (1996) (rejecting Attorney General's Opinion No. 73–4). Thus, although we find the particular opinions cited in this decision to be persuasive in relation to the present case, we are not *required* to follow them.

very same category of regulations as HRS ch. 343—environmental regulations.

Another aspect of this case that is similar to *Jim* is the fact that HRS ch. 343 does not significantly affect the land. HRS ch. 343 essentially requires decision makers to consider the potential impact of their projects on the environment and to prepare informational documents disclosing these effects. "Chapter 343 requires that systematic consideration be given to the environmental and social consequences (in addition to the economic consequences) of proposed state, county, or private actions." State of Hawai'i, Office of Environmental Quality Control, *A Guidebook for the Hawai'i State Environmental Review Process* 1 (1992) [hereinafter *Guidebook* ]. "It is the purpose of this chapter to establish a system of environmental review which will ensure that environmental concerns are given appropriate consideration in decision making along with economic and technical considerations." HRS § 343–1 (1993). The procedure established by HRS ch. 343 focuses on preparation of certain informational documents. The agency or applicant proposing action must prepare an EA that describes the possible environmental effects of the project. HRS § 343–5(b) & (c) (1993). If the agency reviewing the EA determines that the proposed action may have a significant effect on the environment, an EIS must be prepared. *Id.* An EIS is "an informational document ... which discloses the environmental effects of a proposed action, effects of a proposed action on economic and social welfare of the community and State, effects of the economic activities arising out of the proposed action, measures proposed to minimize adverse effects, and alternatives to the action and their environmental effects." HRS § 343–2 (1993). Additionally, various notice and comment procedures apply to both the EA and the EIS. *See* HRS § 343–5(b) & (c). Thus, it is clear that

HRS ch. 343 primarily establishes procedural and informational requirements.

While HRS ch. 343 can affect the land to a certain extent, these effects are incidental to the procedural and informational requirements at the heart of HRS ch. 343. As State Defendants and KCP/Waimana point out, the governor, or the governor's authorized representative, has the authority to accept a final EIS for an agency proposal. *See* HRS § 343–5(b)(1) (1993). "Acceptance of a required final [EIS is] a condition precedent to implementation of the proposed action." HRS § 343–5(b) (1993). Thus, they argue, the governor could block a project on Hawaiian home lands by refusing to accept the final EIS.

It is true that if a project's final EIS is not accepted, the project cannot go forward. However, "[a]cceptability of a statement shall be evaluated on the basis of whether the statement, in its completed form, represents an informational instrument which fulfills the definition of an EIS and adequately discloses and describes all identifiable environmental impacts and satisfactorily responds to review comments." Hawai'i Administrative Rules (HAR) § 11–200–23(a). *See also* HRS § 343–2 (1993); *Guidebook* at 17. In addition, for an EIS to be acceptable, "[t]he procedures for assessment, consultation process, review, and the preparation and submission of the statement [must] have all been completed satisfactorily[.]" HAR § 11–200–23(b)(1). Thus, the governor's role in accepting an EIS is to ensure that the EIS includes the information required and has been prepared in accordance with the specified procedures.[10] Nonacceptance (*i.e.*, denial of acceptance) indicates that the procedural and informational requirements of HRS ch. 343 have not been fulfilled. Although nonacceptance has the incidental effect of stalling the proposed project, the principal objective is to ensure that decision makers

---

10. It should be noted that:

[A]n "acceptance" of the EIS is not an "approval" of the project. "Approval or disapproval of a project occurs after the EIS process is completed and the necessary agency permits are issued or denied."

The final EIS is the basis for the decision-making body ... to make its decision as to

either approval or disapproval or the project in question. Once the project is approved, construction may commence.

*Price v. Obayashi Hawaii Corp.*, 81 Hawai'i 171, 181, 914 P.2d 1364, 1374 (1996) (quoting *Guidebook* at 17).

consider potential environmental impacts and prepare informational documents. Therefore, the effect of HRS ch. 343 on the land is merely incidental to the procedural and informational nature of the statute.

In many ways, the requirements of HRS ch. 343 resemble the requirements of the Hawai'i Administrative Procedure Act (HAPA), HRS ch. 91. Attorney General's Opinion No. 63–16 addressed the question whether HAPA applies to DHHL and ultimately concluded that it does. Both HRS ch. 343 and HAPA primarily establish procedural and informational requirements. Violation of the procedures described in HAPA can lead to the invalidation of state agency actions. *See, e.g., Aguiar v. Hawaii Hous. Auth.,* 55 Haw. 478, 522 P.2d 1255 (1974). Thus, projects on Hawaiian home lands could be adversely affected by HAPA. However, this effect would be incidental to the primary purpose of HAPA, *i.e.,* the establishment of fair administrative procedures. Just as the possibility of HAPA incidentally affecting projects on Hawaiian home lands does not prevent HAPA from being applied, the possibility of HRS ch. 343 incidentally affecting projects on Hawaiian home lands should not prevent HRS ch. 343 from being applied.

The effect of HRS ch. 343 on the land is also incidental in that the statute does not affirmatively require DHHL to use the land for any particular purposes. Whereas application of other laws, such as zoning ordinances, would require DHHL to use Hawaiian home lands for specific purposes, HRS ch. 343 merely places a hold on particular DHHL projects until DHHL complies with the procedural and informational requirements of the statute.

The incidental effect of HRS ch. 343 is even more obvious if the statute is compared to other government actions that have been the subject of Attorney General's opinions in the past. Attorney General's Opinion No. 75–3 dealt with the practice of setting aside land for public use by executive order. The Opinion concluded that setting aside Hawaiian home lands by this procedure conflicts with the HHCA. Clearly, such set asides have a direct and significant effect on the land. Once set aside, the land cannot be used for homesteading purposes and is effectively removed from the Hawaiian home lands program. Similarly, Attorney General's Opinion No. 72–21 dealt with the applicability of county zoning ordinances to Hawaiian home lands. The Opinion concluded that county zoning ordinances do *not* apply to Hawaiian home lands that are needed for homesteading purposes. Zoning laws affirmatively dictate how the land may be used and would therefore require DHHL to use Hawaiian home lands in a manner consistent with the relevant zoning classification. This would also constitute a direct and significant effect on the land. In contrast to these laws, HRS ch. 343 merely imposes procedural and informational requirements on DHHL projects and only has an incidental effect on the land.

It should also be noted that the incidental effect on the land, as discussed above, involves *agency* proposals under HRS § 343–5(b). In contrast, for *applicant* proposals under HRS § 343–5(c), the governor is not the accepting authority. For applicant proposals, the agency, not the governor, is responsible for accepting the final EIS. HRS § 343–5(c) (1993). In regard to Hawaiian home lands, the relevant agency is DHHL. Thus, DHHL is the accepting authority for applicant proposals, and because the governor is not involved, there is no conflict with the HHCA.

In *Jim,* this court also examined the overall objectives of the HHCA and stated that the HHCA must be read in light of those objectives. *Jim,* 80 Hawai'i at 171, 907 P.2d at 757. The court noted that "the HHCA . . . established a public trust for the welfare and rehabilitation of native Hawaiians." *See also Ahuna,* 64 Haw. at 336–37, 640 P.2d at 1167. Thus, if application of a regulatory law is *clearly* contrary to the interests of the Native Hawaiian beneficiaries, it conflicts with the HHCA.

In the present case, it cannot be said that HRS ch. 343 is clearly contrary to the interests of the Native Hawaiian beneficiaries. Indeed, the beneficiaries have an interest in ensuring that the environment on Hawaiian home lands is not harmed. Thus, it is in the interest of the beneficiaries that the environ-

mental impact of projects be considered and informational documents prepared. HRS ch. 343 is not inconsistent with the interests of the Native Hawaiian beneficiaries.

KCP/Waimana and State Defendants also argue that HRS ch. 343 conflicts with section 204 of the HHCA. Section 204 provides in relevant part that "all available lands shall ... be under the control of the department [of Hawaiian home lands] to be used and disposed of in accordance with the provisions of this Act[.]" HHCA § 204, 1 Haw.Rev.Stat. at 205. However, HRS ch. 343 does not significantly interfere with DHHL's control, use, or disposition of Hawaiian home lands because the statute's effect on the land is merely incidental. Thus, section 204 is not violated by application of HRS ch. 343.

KCP/Waimana further argue that HRS ch. 343 conflicts with section 4 of the Admission Act, which provides in relevant part that "the encumbrances authorized to be placed on Hawaiian home lands by officers other than those charged with the administration of said Act, shall not be increased, except with the consent of the United States[.]" Admission Act § 4, 1 Haw.Rev.Stat. at 91. However, again, the effect of HRS ch. 343 is merely incidental; therefore, it cannot be considered an "encumbrance" on the land.

Finally, KCP/Waimana argue that allowing HRS ch. 343 to apply to Hawaiian home lands effectively adds a provision to the HHCA without formally amending it. However, in *Jim*, this court interpreted the HHCA so as to allow the Hawai'i Penal Code to apply to Hawaiian home lands. The present case does not constitute an amendment to the HHCA any more than *Jim* did.

Consequently, based on the above discussion, there is no conflict between HRS ch. 343 and the HHCA. HRS ch. 343 has, at most, an incidental impact on Hawaiian home lands and is not inconsistent with the interests of the beneficiaries. Thus, HRS ch. 343 applies to Hawaiian home lands, and the circuit court's order should be affirmed.

### III. *CONCLUSION*

For the foregoing reasons, we affirm the order of the circuit court. However, this interlocutory appeal is limited to the question whether the requirements of HRS ch. 343 apply to Hawaiian home lands. The factual determination as to whether KCP/Waimana and DHHL actually complied with HRS ch. 343 has not yet been made. Although KCP/Waimana and State Defendants argue that they did comply with HRS ch. 343, the circuit court did not address this issue. Therefore, this case is remanded to the circuit court for further proceedings.