145 P.3d 719

**Jocelyn ABAYA, Individually and as Next Friend of William Pineda–Abaya, Czarina Pineda–Abaya, and Phoebe Pineda–Abaya, and as Special Administrator of the Estate of Willis Abaya, Plaintiffs–Appellees,**

**v.**

**Richard MANTELL aka Richard Mandell and Team Health West, Defendants–Appellees,**

**American Classic Voyages, Co., Party in Interest–Appellant.**

**No. 27195.**

Supreme Court of Hawai'i.

Oct. 24, 2006.

Reconsideration Denied Nov. 13, 2006.

Normand R. Lezy (of Leong Kunihiro Leong & Lezy), on the briefs, Honolulu, for party in interest-appellant American Classic Voyages Co.

R. Patrick Jaress, on the briefs, Honolulu, for plaintiffs-appellees.

Elton John Bain and E. Mason Martin, III (of Kessner Duca Umebayashi Bain & Matsunaga), on the briefs, Honolulu, for defendants-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and Circuit Judge AHN, in place of ACOBA, J., Recused.

Opinion of the Court by MOON, C.J.

The instant appeal arises out of a determination by the Circuit Court of the First Circuit[1] that a settlement agreement between plaintiffs-appellees Jocelyn Abaya, individually and as next friend of William Pineda–Abaya, Czarina Pineda–Abaya, and Phoebe Pineda–Abaya, and as special administrator of the Estate of Willis Abaya [hereinafter, collectively, the plaintiffs][2] and defendants-appellees Richard Mantell aka Richard Mandell (Dr. Mantell) and Team Health West (THW) [hereinafter, collectively, the defendants] was made in good faith, pursuant to Hawai'i Revised Statutes (HRS) § 663–15.5 (Supp.2005), quoted *infra*. The circuit court's good faith determination was made over "party-in-interest"-appellant American Classic Voyages Company (Appellant)'s objection that the agreement evinced collusion between the plaintiffs and the defendants to Appellant's detriment.

Appellant appeals from the circuit court's (1) February 25, 2005 order granting the plaintiffs' petition for determination of good faith settlement and (2) April 25, 2005 order denying Appellant's motion for relief from and for reconsideration of the February 25, 2005 order. On appeal, Appellant claims that the circuit court abused its discretion in granting the plaintiffs' petition. Specifically, Appellant argues that the settlement was not made in good faith inasmuch as the plaintiffs and the defendants "colluded in the wording" of the settlement agreement "in order to sever or otherwise avoid" the effect of a written indemnity agreement between Appellant and THW, thereby injuring Appellant's interests.

Based on the discussion below, we conclude that, because Appellant failed to properly intervene in the instant case, it is not a party to the case. Thus, Appellant lacks standing to challenge the circuit court's orders from which this appeal is taken. Accordingly, we dismiss the instant appeal.

## II. *BACKGROUND*

At all times relevant herein, Willis Abaya was employed by Great Independence Ship Company, a "subsidiary entity" of Appellant, as a porter aboard the cruise ship S.S. Independence (the ship). Appellant, in turn, owned and operated the ship.[3] Appellant contracted with Quantum Healthcare Medical Associates, Inc. (Quantum)[4] to, *inter alia,* operate a hospital aboard the ship and provide a medical staff for the hospital. The

1. The Honorable Sabrina S. McKenna presided over the underlying proceedings unless otherwise indicated.

2. On March 24, 2003, Jocelyn Abaya, Willis Abaya's wife, moved for an order appointing her as next friend for William Pineda–Abaya, Czarina Pineda–Abaya, and Phoebe Pineda–Abaya, the Abayas' three minor children. On the same day, the Honorable Karen N. Blondin granted the order.

3. Although Appellant indicated that it owned and operated the ship, the defendants stated that the ship was owned by Appellant but operated by American Hawai'i Cruise Line. The distinction, however, appears to be inconsequential to the instant case.

4. According to Appellant, Quantum is apparently wholly owned by parent corporation Team Health, Inc. and is now known as THW. However, according to the defendants, Quantum is a wholly owned subsidiary of THW. The parties appear to refer to Quantum and THW interchangeably. Thus, we have done the same.

contractual provisions are set forth in the Professional Service Agreement (PSA) executed by Appellant and Quantum/THW. The PSA contains an indemnification agreement, wherein Appellant and THW essentially agreed, *inter alia*, to indemnify and hold each other harmless for the other's negligence.

Pursuant to the PSA, Quantum contracted with Dr. Mantell to serve as an "independent contractor physician" aboard the ship. Dr. Mantell is a medical doctor and surgeon, licensed in the State of California, and is certified as the ship's physician by the United States Coast Guard.

## A. *Factual Background*

On May 23, 2001, Abaya, while working aboard the ship, became ill and was brought to the ship's hospital in a wheelchair by his co-worker. According to the defendants, Abaya was brought to the ship's hospital at approximately 5:20 p.m.[5] At that time, the ship was docked at Honolulu Harbor in the State of Hawai'i. Upon arriving at the ship's hospital, Abaya immediately became "unresponsive and went into seizure activity." Dr. Mantell determined that Abaya was having a myocardial infarction, commonly known as a heart attack. After the initial seizure activity, Abaya apparently became somewhat responsive and was able to answer certain questions posed by Dr. Mantell. At some point later, Abaya suffered additional seizure activity. After the additional seizure activity,

Abaya became unresponsive without any vital signs. According to the defendants, Abaya remained unresponsive despite Dr. Mantell's efforts.

At some point after Abaya was brought to the ship's hospital, the plaintiffs allege that an ambulance was called to transport Abaya to Queen's Medical Center (QMC), a nearby hospital located in Honolulu. When the ambulance crew arrived at the ship's hospital, Dr. Mantell apparently "would not release" Abaya to the ambulance crew. Ultimately, Abaya remained at the ship's hospital in the care of Dr. Mantell. Thereafter, Dr. Mantell pronounced Abaya dead at 6:12 p.m.

## B. *Procedural History*

On March 18, 2003, the plaintiffs filed their complaint against the defendants but not against Appellant, apparently because Appellant was involved in a Chapter 11 bankruptcy proceeding.[6] The plaintiffs essentially alleged that Dr. Mantell was negligent in the care and treatment of Abaya. The plaintiffs also alleged that THW was liable for (1) Dr. Mantell's negligence under the doctrine of respondeat superior and (2) its own negligence. Specifically, the plaintiffs claimed that THW was negligent "in recommending or providing [Dr.] Mantell to provide services on the ship[.]" Moreover, the plaintiffs asserted that the defendants failed to obtain the necessary informed consent from Abaya and/or the plaintiffs.

---

**5.** On appeal, the plaintiffs state that it is "unclear" when Abaya first arrived at the ship's hospital. In addition, the plaintiffs state that Abaya became ill "with heart attack symptoms" at 3:00 p.m.

**6.** Prior to the filing of the complaint, Appellant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Code for the District of Delaware (the bankruptcy court). According to Appellant, the bankruptcy court entered an "Order Approving the Implementation of Procedures to Liquidate Certain Disputed Personal Injury Claims" (the bankruptcy order) on September 24, 2002. On April 24, 2002, the Estate of Willis Abaya (the Estate) apparently asserted claims arising from Abaya's death against Appellant, pursuant to the bankruptcy order. According to Appellant, the Estate asserted "claims against [Appellant,] alleging negligence under the Jones Act ... and the general maritime law." Specifically, the Estate

apparently alleged that Appellant was "negligent in, among other things, failing to provide [Abaya] with proper medical care and failing to ensure the hospital aboard the [ship] was properly equipped."

According to the plaintiffs on appeal, however, "[b]ecause of the bankruptcy petition filed by [Appellant], the claims against [Appellant] are not yet detailed in a formal pleading." The plaintiffs further state that, "[o]nce the automatic stay is lifted, the [estate and the survivors of Abaya] will be filing an action against [Appellant] to prosecute the claims against [Appellant] based on its alleged wrongdoing and not for any liability [it] may have for vicarious liability it would otherwise be held accountable for due to negligence by the [defendants]." Finally, the plaintiffs state that they "filed a proof of claim in the bankruptcy proceedings."

On September 15, 2004, the plaintiffs and the defendants entered into a settlement, resolving all claims against the defendants arising from Abaya's death. The essential terms of the settlement were incorporated in a document entitled "ESSENTIAL ABAYA TERMS" [hereinafter, the Essential Terms]. The Essential Terms was confidential, placed on the record on September 15, 2004, and sealed.

On November 8, 2004, the plaintiffs filed a "Petition for Determination of Good Faith Settlement" [hereinafter, the petition], pursuant to HRS § 663–15.5.[7] The plaintiffs asserted that the petition

is submitted on the grounds that [the p]laintiffs have, in good faith, entered into a settlement with [the d]efendants. The settlement, under all the circumstances of the case, is fair and reasonable.

The essential terms of the settlement are that all of [the p]laintiffs' claims against [the d]efendants will be released in return for payment to [the p]laintiffs of a confidential amount.

Thus, the plaintiffs requested the circuit court to determine that the settlement was entered into in good faith and that the settlement "bars all joint tortfeasors from asserting any claims against [the d]efendants for contribution and/or indemnity arising out of the incidents which form the basis of [the p]laintiffs' claims[.]"[8] The plaintiffs also served Appellant with notice of the petition, in apparent recognition of Appellant's status as a known joint tortfeasor, pursuant to HRS § 663–15.5(b). *See supra* note 7.

On November 22, 2004, the plaintiffs and the defendants filed a "Stipulation for Dismissal With Prejudice of all Claims Against [Dr.] Mantell." On November 30, 2004, Appellant—identifying itself as a "party in interest"—filed its objection to the petition, but did not—at that time, or any time thereafter, move to intervene as a party in the instant action. Appellant contested the good faith of the settlement agreement proposed by the plaintiffs and the defendants "to the extent, if any, that such settlement operates to sever or otherwise avoid the [indemnity agreement contained in the PSA] between [Appellant] and [the d]efendants."[9] Appellant requested the circuit court to require the plaintiffs and the defendants to "disclose the specific basis and terms of the proposed settlement" and, "if warranted, that the [circuit c]ourt invalidate any basis or term of settlement that operates, or seeks to operate, to sever or otherwise avoid the [indemnity agreement] between [Appellant] and [the d]efendants [10] as lacking in good faith pursuant to the provisions of HRS § 663–15.5."

On December 3, 2004, the defendants filed their "substantive joinder" in the petition [hereinafter, the joinder] and attached (1) the Essential Terms and (2) the Release, Indemnification and Settlement Agreement. The defendants submitted in their joinder that "[t]here are a number of factors" that would support the determination that the settlement was made in good faith.

On December 6, 2004, a hearing was held on the petition. On February 25, 2005, the

7.  HRS § 663–15.5 provides in relevant part:

    (b) [A]ny party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, serving notice to all other known joint tortfeasors or co-obligors....

    The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount.

8.  HRS § 663–15.5(d) provides:

    (d) A determination by the court that a settlement was made in good faith shall:
    (1) Bar any other joint tortfeasor or co-obligor from any further claims against the set-

tling tortfeasor or co-obligor, except those based on a written indemnity agreement; and
    (2) Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement.

9.  We note that Appellant states that the subject indemnity agreement (contained in the PSA) was entered into between it and "the defendants," *i.e.*, THW and Dr. Mantell. However, as previously mentioned, the PSA was entered into between Appellant and Quantum/THW. Dr. Mantell, therefore, was not a contracting party to the PSA.

10.  *See supra* note 9.

circuit court entered its order granting the petition [hereinafter, the order]. The circuit court stated in relevant part:

> 1. The [circuit] court determines and orders that [the p]laintiffs' settlement with [the d]efendants was entered into in good faith, considering the various factors set forth in *Troyer v. Adams*, [102 Hawai'i 399,] 77 P.3d 83 [ (2003) ]. This includes the expenses, including expert testimony, for [the p]laintiffs[ ] to present a case against the [d]efendants herein, and the strengths and weaknesses of the case against the [d]efendants herein.

> 2. In that there is no opposition to the [petition] by anyone other than [Appellant], the [circuit] court hereby determines that, with the exception of [Appellant], the settlement bars all joint tortfeasors from asserting any claims against [the d]efendants for contribution and/or indemnity arising out of the incidents which form the basis of [the p]laintiffs' claims herein.

> 3. With respect to [Appellant], the [circuit] court reiterates its finding and determination that [the p]laintiffs' settlement with [the d]efendants was entered into in good faith. The [circuit] court makes no determination regarding the effect of HRS § 663–15.5(d)(1) [11] or whether any of the rights of [Appellant] against the [d]efendants herein based upon a written indemnity agreement would be affected by the settlement. Any claims by [Appellant] against any of the [d]efendants herein other than [those] based upon a written indemnity agreement are barred. To the extent any of the provisions of the settle-

ment conflict with HRS § 663–15.5(d)(1), the statute would control.

(Emphasis added.) The order was served on Appellant and the defendants on March 8, 2005. On March 28, 2005, Appellant filed its notice of appeal pursuant to, *inter alia*, HRS § 663–15.5(e).[12]

On the same day, Appellant filed a motion for relief from and for reconsideration of the order [hereinafter, motion for reconsideration]. Appellant requested reconsideration of the order on the basis that, because the terms of the settlement agreement were not timely disclosed to Appellant, it could not present an effective argument at the December 6, 2004 hearing on the petition.

On April 13, 2005, the circuit court orally denied Appellant's motion for reconsideration. Appellant filed an amended notice of appeal on April 15, 2005. On April 25, 2005, the circuit court entered its written order denying Appellant's motion for reconsideration.

### III. *STANDARD OF REVIEW*

■ On appeal, the issue of standing is reviewed *de novo* under the right/wrong standard. *State ex rel. Office of Consumer Protection v. Honolulu Univ. of Arts, Sciences and Humanities*, 110 Hawai'i 504, 513, 135 P.3d 113, 122 (2006) (citing *Mottl v. Miyahira*, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001)).

### IV. *DISCUSSION*

Before this court can address Appellant's assertion that the settlement agreement between the plaintiffs and the defendants was

---

11. As previously stated, HRS § 663–15.5(d)(1) provides:

> (d) A determination by the court that a settlement was made in good faith shall:
> (1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, *except those based on a written indemnity agreement* [.]

(Emphasis added.)

12. HRS § 663–15.5(e) provides:

> (e) *A party aggrieved by a court determination on the issue of good faith may appeal the determination. The appeal shall be filed within twenty days after service of written notice of the*

*determination*, or within any additional time not exceeding twenty days as the court may allow.

(Emphases added.) We note that the March 8, 2005 service date is documented in a letter from Appellant's counsel to the plaintiffs' counsel. None of the parties dispute that the written notification of the circuit court's order was served on the parties prior to March 8, 2005, and the record does not contain any evidence disputing the March 8, 2005 service date. Thus, because Appellant's March 28, 2005 notice of appeal was filed within twenty days after the March 8, 2005 service of the written notice of the order, Appellant's March 28, 2005 notice of appeal was timely filed.

not made in good faith, we must initially determine whether Appellant has standing to appeal in the first instance. We conclude that it does not.

■ This court has stated that:

Generally, the requirements of standing to appeal are: (1) *the person must first have been a party to the action;* (2) the person seeking modification of the order or judgment must have had standing to oppose it in the trial court; and (3) such person must be aggrieved by the ruling, *i.e.,* the person must be one who is affected or prejudiced by the appealable order.

*Kepoʻo v. Watson,* 87 Hawaiʻi 91, 95, 952 P.2d 379, 383 (1998) (quoting *Waikiki Malia Hotel, Inc. v. Kinkai Props., Ltd. P'ship,* 75 Haw. 370, 393, 862 P.2d 1048, 1061 (1993)) (emphasis added) (internal quotation marks and brackets omitted); *see also Stewart Props., Inc. v. Brennan,* 8 Haw.App. 431, 433, 807 P.2d 606, 607 (1991) (stating that "[a] well-settled rule is that only parties to a lawsuit ... may appeal an adverse judgment") (citation omitted) (ellipsis in original). "In other words, *nonparties, who did not or could not intervene, are ordinarily denied standing to appeal.*" *Id.* (citing 15 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure: Jurisdiction* § 3902, at 407 (1976)) (footnote, brackets, and internal quotation marks omitted) (emphasis added).

This court recently held in *Bacerra v. MacMillan,* 111 Hawaiʻi 117, 138 P.3d 749 (2006), that an entity that did not move to intervene, but merely filed a notice of lien, in an underlying medical malpractice action lacked standing to appeal the circuit court's order dismissing such notice of lien. *Id.* at 119–20, 138 P.3d at 751–52. In the underlying action, the plaintiffs (a father, a mother, and their child represented by the mother) filed a medical malpractice complaint against the defendants (the attending physician and the hospital), essentially alleging that, as a result of the defendants' negligence, the child sustained severe brain damage during his birth. *Id.* at 118, 138 P.3d at 750. The medical expenses incurred as a result of the child's extensive medical care and treatment were paid by the nonparty entity (a trust fund that provided medical coverage to the plaintiffs) and the State of Hawaiʻi's Department of Human Services (DHS). *Id.* Ultimately, the plaintiffs reached a settlement with the physician, as evinced by their "Petition for Approval of Good Faith Settlement." *Id.* Subsequently, the circuit court issued an "Order for Attendance of Persons/Entities at Further Settlement Conference," mandating the attendance of the nonparty entity at a further settlement conference. *Id.* The order was the first notification to the nonparty entity that the child's condition may have been caused by a third-party against whom the plaintiffs were pursuing an action to recover damages. *Id.* Consequently, the entity filed a notice of lien, asserting its right of reimbursement for payments made by it on behalf of the child. *Id.* The entity, however, did not file a motion to intervene as a party in the action. *Id.* at 119, 138 P.3d at 751. The plaintiffs thereafter moved to dismiss the notice of lien on the basis that the entity's lien action was preempted by the Federal Employees Retirement Income Security Act of 1974, commonly known as ERISA, codified at 29 U.S.C. § 1001 *et seq. Id.* The circuit court, over the objection of the entity, dismissed the notice of lien. *Id.*

On appeal, this court stated that "the act of filing of a notice of lien, in and of itself, does not make the lienor a party to the case." *Id.* Specifically, this court stated that:

To assert its lien or lien claim in the instant case, the [entity] was required to institute "an independent action" or intervene as a party in the instant case, pursuant to [Hawaiʻi Rules of Civil Procedure (HRCP)] Rule 24 (2004).[FN3] Having failed to do so, the [entity] does not meet the first prong of the standing requirements recited in *Kepoʻo, i.e.,* "the person must first have been a party to the action." *Kepoʻo,* 87 Hawaiʻi at 95, 952 P.2d at 383 (citation omitted). We, therefore, hold that, because the [entity] was not made a party to the instant case, it lack standing to appeal.

FN 3: HRCP Rule 24 provides in relevant part:

(a) *Intervention of right.* Upon timely application[,] anyone shall be permitted to intervene in an action: (1) when a

statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

. . .

(c) *Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. . . .

*Id.* at 120, 138 P.3d at 752 (emphases and citation omitted).

■ The instant case was filed solely in the names of the plaintiffs, who, in turn, named only Dr. Mantell and THW as defendants. Indeed, Appellant expressly states on appeal that it "was not made a party to the underlying action[.]" As previously stated, the plaintiffs served Appellant with notice of the petition, in apparent recognition of Appellant's status as a "known joint tortfeasor," pursuant to HRS § 663–15.5(b). Moreover, Appellant was permitted to object to the plaintiffs' petition, also pursuant to HRS § 663–15.5(b). HRS § 663–15.5 provides in relevant part:

(a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:

(1) Not discharge any other **joint tortfeasor or co-obligor** not released from liability unless its terms so provide;

(2) Reduce the claims against the other **joint tortfeasor or co-obligor** not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and

(3) Discharge the party to whom it is given from all liability for any contribution to any other **joint tortfeasor or co-obligor.**

This subsection shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves.

(b) For purposes of subsection (a), any party shall petition the court for a hearing on the issue of good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, *serving notice to all other known joint tortfeasors or co-obligors.* Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount.

The notice, petition, and proposed order shall be served as provided by rules of court or by certified mail, return receipt requested. Proof of service shall be filed with the court. *Within twenty-five days of the mailing of the notice, petition, and proposed order, a nonsettling **alleged joint tortfeasor or co-obligor** may file an objection to contest the good faith of the settlement.* If none of the nonsettling **alleged joint tortfeasors or co-obligors** files an objection within the twenty-five days, the court may approve the settlement without a hearing. An objection by a nonsettling **alleged joint tortfeasor or co-obligor** shall be served upon all parties. A nonsettling **alleged joint tortfeasor or co-obligor** asserting a lack of good faith shall have the burden of proof on that issue.

Where a confidentiality agreement has been entered into regarding the claim or settlement terms, the court shall hear the

matter in a manner consistent with preventing public disclosure of the agreement while providing other joint tortfeasors and co-obligors sufficient information to object to a proposed settlement.

. . . .

(d) A determination by the court that a settlement was made in good faith shall:

(1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based on a written indemnity agreement; and

(2) Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement.

(e) *A party* aggrieved by a court determination on the issue of good faith may appeal the determination. The appeal shall be filed within twenty days after service of written notice of the determination, or within any additional time not exceeding twenty days as the court may allow.

(Emphases added.) According to the plain language of HRS § 663–15.5(b), Appellant need not have been "a party" to file its objection to the petition in the instant case; rather, Appellant need only have been "a nonsettling alleged joint tortfeasor or co-obligor." However, as HRS § 663–15.5(e) unequivocally indicates, only *"[a] party* aggrieved by a court determination on the issue of good faith *may appeal the determination."* (Emphases added.) In fact, the 2003 amendments to HRS § 663–15.5, as originally enacted in 2001, support the notion that the legislature recognized that a distinction may exist between "a party" and "a nonsettling alleged joint tortfeasor or co-obligor." In 2003, the legislature amended, *inter alia,* HRS § 663–15.5(a) and (b) by substituting "joint tortfeasor or co-obligor" in place of "party" as follows (bracketed language stricken; underscored language added):

(a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights, shall:

(1) Not discharge any other [party] **joint tortfeasor or co-obligor** not released from liability unless its terms so provide;

(2) Reduce the claims against the other [party] **joint tortfeasor or co-obligor** not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and

(3) Discharge the party to whom it is given from all liability for any contribution to any other [party] **joint tortfeasor or co-obligor**.

. . . .

(b). . . .

Within twenty-five days of the mailing of the notice, petition, and proposed order, a nonsettling [party] **alleged joint tortfeasor or co-obligor** may file an objection to contest the good faith of the settlement. If none of the nonsettling [parties] **alleged joint tortfeasors or co-obligors** files an objection within the twenty-five days, the court may approve the settlement without a hearing. An objection by a **nonsettling** [party] **alleged joint tortfeasor or co-obligor** shall be served upon all [other] parties. [The party] **A nonsettling alleged joint tortfeasor or co-obligor** asserting a lack of good faith shall have the burden of proof on that issue.

2003 Haw. Sess. L. Act 146, § 1 at 343–44 (bold emphases added). The legislature, however, did *not* amend HRS § 663–15.5(e), which, as previously stated, provides that only "[a] party aggrieved by a court determination on the issue of good faith may appeal the determination." As such, it reasonably can be said that the legislature intended only parties, *not merely non-settling alleged joint tortfeasors,* to have the right to appeal a court determination on the issue of good faith. Thus, for purposes of appeal, Appellant was required to intervene as a party in the instant case, pursuant to HRCP Rule 24. Having failed to do so, Appellant does not meet the first prong of the standing requirements recited in *Kepo'o,* that is, "the person must first have been a party to the action."

*Kepoʻo,* 87 Hawaiʻi at 95, 952 P.2d at 383 (citation omitted). Accordingly, because Appellant was not made a party to the instant case, it lacks standing to appeal. *See Bacerra,* 111 Hawaiʻi at 120, 138 P.3d at 752; *Chierighino v. Bowers,* 2 Haw.App. 291, 295, 631 P.2d 183, 186 (1981) (holding that, because the appellant was not a party to the action, his appeal must be dismissed).

## V. *CONCLUSION*

Based on the foregoing, we dismiss Appellant's appeal.

