**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000120**
**12-DEC-2024**
**08:26 AM**
**Dkt. 84 SO**

CAAP-21-0000120 and CAAP-23-0000015
(consolidated)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

<u>**CAAP-21-0000120**</u>
ALAN SEAN ABAD and CAROLYN KEHAUNANI ABAD,
Plaintiffs-Appellees, v.
JAMES ALFRED GRIFFITH; CATHRYN JUDD GRIFFITH,
Defendants-Appellants, and
JAMES S. FARMER; COLDWELL BANKER PACIFIC PROPERTIES LLC,
dba COLDWELL BANKER PACIFIC PROPERTIES,
Defendants-Appellees, and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; and
DOE GOVERNMENTAL ENTITIES 1-10, Defendants-Appellees,
and
COLDWELL BANKER PACIFIC PROPERTIES LLC and
JAMES S. FARMER, Defendants/Crossclaimants-Appellees, v.
JAMES ALFRED GRIFFITH and CATHRYN JUDD GRIFFITH,
Defendants/Cross-Claim Defendants-Appellants, and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10, and
DOE GOVERNMENTAL ENTITIES 1-10, Defendants-Appellees,
and
JAMES ALFRED GRIFFITH and CATHRYN JUDD GRIFFITH,
Defendants/Crossclaimants-Appellants, v.
JAMES S. FARMER and COLDWELL BANKER PACIFIC PROPERTIES
dba COLDWELL BANKER PACIFIC PROPERTIES,
Defendants/Cross-Claim Defendants-Appellees,
and
JAMES ALFRED GRIFFITH and CATHRYN JUDD GRIFFITH,
Third-Party Plaintiffs-Appellants, v.
GRANT KAPONO KANOHO and MARCUS & ASSOCIATES, INC.,
Third-Party Defendants-Appellees,
and
JAMES ALFRED GRIFFITH and CATHRYN JUDD GRIFFITH,
Third-Party Plaintiffs-Appellants, v.
THE GRAD LAW FIRM, a Hawaii Limited Liability Partnership,
Third-Party Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC161002324)

and

**CAAP-23-0000015**
ALAN SEAN ABAD and CAROLYN KEHAUNANI ABAD,
Plaintiffs-Appellees, v.
JAMES ALFRED GRIFFITH and CATHRYN JUDD GRIFFITH,
Defendants/Crossclaim Defendants/
Third-Party Plaintiffs-Appellants, and
JAMES S. FARMER; COLDWELL BANKER PACIFIC PROPERTIES LLC,
dba COLDWELL BANKER PACIFIC PROPERTIES,
Defendants/Crossclaimants-Appellees, and
GRANT KAPONO KANOHO and MARCUS & ASSOCIATES, INC., and
THE GRAD LAW FIRM, a Hawaii Limited Liability Partnership,
Third-Party Defendants-Appellees, and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10, and
DOE GOVERNMENTAL ENTITIES 1-10, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC161002324)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

In this consolidated appeal, Defendants/Crossclaim Defendants/Crossclaimants/Third-Party Plaintiffs-Appellants James Alfred Griffith and Cathryn Judd Griffith (**Griffiths**) appeal from the April 7, 2021 Order Granting Third-Party Defendants Grant Kapono Kanoho and Marcus & Associates, Inc.'s Petition for Determination of Good Faith Settlement Filed January 27, 2021 (**Order Granting MAI Petition**), and the January 3, 2023 Order Granting Defendants Coldwell Banker Pacific Properties LLC dba Coldwell Banker Pacific Properties and James S. Farmer's Petition for Determination of Good Faith Settlement (**Order Granting Coldwell Petition**), entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]  Upon temporary remand, a Final Judgment was entered on August 26, 2024.

---

[1]  The Honorable Gary W.B. Chang presided.

2

The Griffiths raise three points of error on appeal, contending that the Circuit Court: (1) abused its discretion by failing to properly apply the "totality of the circumstances" approach and the factors identified in <u>Troyer v. Adams</u>, 102 Hawaiʻi 399, 77 P.3d 83 (2003), in determining the settlement between Third-Party Defendants-Appellees Grant Kapono Kanoho (**Kanoho**) and Marcus & Associates, Inc. (together, **MAI Defendants**) and Plaintiffs-Appellees Alan Sean Abad and Carolyn Kehaunani Abad (**Abads**) was made in good faith; (2) dismissing the Griffiths' direct claim against the MAI Defendants for breach of duty to disclose any known material fact; and (3) dismissing the Griffiths' direct claim against Defendants/Crossclaimants/ Crossclaim Defendants-Appellees James S. Farmer and Coldwell Banker Pacific Properties LLC (together, **Coldwell Defendants**) for compensatory damages under <u>Uyemura v. Wick</u>, 57 Haw. 102, 551 P.2d 171 (1976).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Griffiths' points of error as follows:

(1) The Griffiths argue that the Circuit Court abused its discretion when it granted the [MAI Defendants'] Petition for Determination of Good Faith Settlement (**MAI Petition**), as it failed to follow the totality of the circumstances approach prescribed in <u>Troyer</u>, and instead relied on the absence of improper collusion between the settling parties. They contend the standard applied was based on language "not rooted in

3

Troyer," which constitutes an abuse of discretion because it "disregards rules or principles of law or practice."

The good faith settlement procedures "provid[e] courts with the opportunity to prevent collusive settlements aimed at injuring non-settling tortfeasors' interests." Troyer, 102 Hawaiʻi at 427, 77 P.3d at 111. Consistent with Troyer, the "non-collusive" standard and the "totality of the circumstances" approach both require the court to consider whether there was evidence of wrongful conduct, among other factors. Befitel v. Lyckman, No. 30691, 2013 WL 1131612, at *3 (Haw. App. Mar. 18, 2013) (mem. op.). The court is not required to enter findings of fact and conclusions of law related to its ruling on a petition for good faith settlement. Id.

Here, the record reflects that the MAI Defendants and the Griffiths fully briefed and argued the Troyer factors to the Circuit Court, utilizing the totality of circumstances standard; there is nothing in the record to support a conclusion that the Circuit Court did not fully consider and weigh all of the evidence and arguments presented. The Griffiths relied in large part on allegations of collusion and improper purpose in opposing the MAI Petition. That the Circuit Court addressed the absence of improper collusion does not reflect a misapplication of the Troyer factors. See Troyer, 102 Hawaiʻi at 424, 77 P.3d at 108 ("[T]he totality of the circumstances approach permits the court to ferret out collusive settlements in which the settlement amount may not be the 'prime badge' of bad faith.").

The Hawaiʻi Supreme Court held in Troyer that "the determination of whether a settlement is in good faith [is left]

4

to the sound discretion of the trial court in light of the totality of the circumstances surrounding the settlement." Id. at 427, 77 P.3d at 111. We review the trial court's good faith determination for abuse of discretion. Id. at 434, 77 P.3d at 118. The supreme court explained that:

> [T]he trial court may consider the following factors to the extent that they are known at the time of settlement: (1) the type of case and difficulty of proof at trial, *e.g.*, rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose. The foregoing list is not exclusive, and the court may consider any other factor that is relevant to whether a settlement has been given in good faith.

Id. at 427, 77 P.3d at 111.

As noted above, all of these factors were argued to the Circuit Court prior to its determination. There is no indication or argument that the court did not fully consider them. Instead, the Griffiths invite this court to re-weigh the Troyer factors and conclude that the factors weigh against a determination that the settlement was made in good faith. We decline to do so.

On appeal, the Griffiths point in particular to the relationship between the Abads and Kanoho, and what the Griffiths characterize as a shared litigation strategy. It is undisputed that the Abads testified that they considered Kanoho to be "a friend," but the record also shows that characterization was qualified, and the deposition testimony included that they had not been in contact with each other for many years before the Abads selected Kanoho as their realtor. Indeed, considering the

5

genesis of this dispute – that the Griffiths, through the Coldwell Defendants, sold the Abads real property consisting of a condominium unit created by the Griffiths, upon which the Abads could not lawfully build a home because it was too small – it is not surprising or inherently improper or collusive that the Abads would initially seek to work with their own agents, the MAI Defendants, to seek redress for the Abads, rather than suing the MAI Defendants.

The Griffiths also point to the MAI Defendants' "degree of fault" in not catching the "buildability" issue before the sale closed. However, Kanoho acknowledged his failures and paid a significant settlement amount. This issue was fully briefed before the Circuit Court, which weighed it along with the other factors presented in support of and against the MAI Petition.

Upon review of the entirety of the record before the Circuit Court, we cannot conclude that the Circuit Court abused its discretion in granting the MAI Petition.

(2) & (3)  The Griffiths argue that their third-party claims against the MAI Defendants were not limited to indemnity and contribution claims, but included an independent, direct claim for breach of duty to disclose any known material facts to the Griffiths. Similarly, they argue that their breach of fiduciary duty and negligent misrepresentation crossclaims against the Coldwell Defendants raise direct claims for damages. The Griffiths characterize their direct claims against MAI Defendants and Coldwell Defendants (collectively, **Realtors**) as "Uyemura" claims (**Uyemura Claims**). See Uyemura, 57 Haw. at 108-09, 551 P.2d at 176 ("[W]here the wrongful act of the

defendant has involved the plaintiff in litigation with others, . . . such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.").  The Griffiths argue that the Circuit Court erred in dismissing these direct Uyemura Claims because they are not in the nature of contribution or indemnity claims against a "joint tortfeasor" under Hawaii Revised Statutes (**HRS**) § 663-15.5 (2016 & Supp. 2023), but seek their own damages, which are separate from the issue of the various joint tortfeasors' liability to the Abads.

To resolve these arguments, we must consider whether HRS § 663-15.5 requires dismissal of only those crossclaims against the settling joint tortfeasor that seek indemnity or contribution for the plaintiff's injury, and if so, whether the Griffiths' Uyemura Claims are direct claims for their own injury, not in the nature of indemnity or contribution for the Abads' injury.  We do not consider whether there is any merit to such claims.

> [T]he fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Barker v. Young, 153 Hawai'i 144, 148, 528 P.3d 217, 221 (2023)

7

(citation and quotation marks omitted). "The statutory language of a subsection should not be read in isolation, it must be read in the context of the section as a whole and construed consistently with its scheme and purpose." <u>Neumann v. Ramil</u>, 6 Haw. App. 377, 384, 722 P.2d 1048, 1053 (1986) (brackets and ellipses omitted).

HRS § 663-15.5 governs good faith settlements, and subsection (a) states:

> **§ 663-15.5 Release; joint tortfeasors; co-obligors; good faith settlement.** (a) A release, dismissal with or without prejudice, or a covenant not to sue or not to enforce a judgment that is given in good faith under subsection (b) to <u>one or more joint tortfeasors, or to one or more co-obligors who are mutually subject to contribution rights</u>, shall:
>
> > (1) Not discharge any other joint tortfeasor or co-obligor not released from liability unless its terms so provide;
> >
> > (2) <u>Reduce the claims against the other joint tortfeasor or co-obligor</u> not released in the amount stipulated by the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater; and
> >
> > (3) Discharge the party to whom it is given from <u>all liability for any contribution to any other joint tortfeasor or co-obligor.</u>

(Emphasis added).

HRS § 663-15.5(d) states:

> (d) A determination by the court that a settlement was made in good faith shall:
>
> > (1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based on a written indemnity agreement; and
> >
> > (2) <u>Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor</u>, except those based on a written indemnity agreement.

(Emphasis added).

HRS § 663-15.5(a) provides that a good faith settlement "[d]ischarge[s] the party to whom it is given from all liability

8

for any contribution to any other joint tortfeasor or co-obligor," not necessarily from liability to any co-defendant for any claim raised in that case. Indeed, the Legislature chose the terms "joint tortfeasor" and "co-obligor," not "party," "co-party," "co-defendant," "crossclaim defendant," or "third party defendant" because a good faith settlement under HRS § 663-15.5 need not be brought in an action where litigation is pending against joint tortfeasor defendants, nor do the non-settling joint tortfeasors need to be made parties to the good faith settlement proceeding. Abaya v. Mantell, 112 Hawaiʻi 176, 183, 145 P.3d 719, 726 (2006). Given further that HRS § 663-11 (2016) defines "joint tortfeasor" as "two or more persons jointly or severally liable in tort for the same injury to person or property," it appears "joint tortfeasor" under the statute refers to a relationship of liability, not simply a relationship of co-defendants. Thus, HRS § 663-15.5(d)(2)'s mandate to dismiss crossclaims against "the settling joint tortfeasor or co-obligor" requires dismissal of only those crossclaims raised in the capacity of a joint tortfeasor relationship, *i.e.*, as persons who may be jointly or severally liable in tort for the same injury to person or property. Interpreting HRS § 663-15.5(d)(2) as requiring dismissal of all crossclaims against a settling joint tortfeasor party, regardless of the nature of the claim, may result in the dismissal of permissive crossclaims relating to the same transaction, but not stemming from liability for the plaintiff's injury.

Reading all parts of HRS § 663-15.5 together, we conclude the trial court's approval of a good faith settlement

under HRS § 663-15.5(d)(2) requires dismissal of only those crossclaims against a settling joint tortfeasor raised in the capacity of a joint tortfeasor, *i.e.*, those seeking contribution or indemnity (directly or indirectly) for the injury (to the complainant) that is the subject of the good faith settlement.

Next, we examine, for this limited purpose, the nature of the Griffiths' claims against the Realtors, *i.e.,* to consider whether they seek contribution or indemnity for the original injury to Abads, as opposed to relief for alleged direct injuries to the Griffiths.

In Uyemura, the developer's realtors sold the same lot to two different buyers, Uyemura and the Chungs. 57 Haw. at 105, 551 P.2d at 174. Only the Chungs obtained title from the developer, so Uyemura sued the developer, its realtors, and the Chungs for specific performance and damages. Id. at 106-07, 551 P.2d at 174-75. The Chungs cross-claimed against the developer and its realtors for attorneys' fees and costs incurred in defending Uyemura's claim, which the trial court awarded. Id. The supreme court upheld the award of attorneys' fees and costs to the Chungs, reasoning that the Chungs raised a fraudulent concealment claim against the developer and its realtors for concealing that litigation was pending or imminent in regards to their ability to sell the property to the Chungs, which ultimately caused the Chungs to become involved in litigation against Uyemura. Id. at 110, 551 P.2d at 176. Thus, the Chungs were entitled to an award of damages from the developer and its realtors in the form of attorneys' fees and costs incurred in defending against Uyemura's claim. Id.

10

Here, count 4 of the Third-Party Complaint against the MAI Defendants and counts 1 and 2 of the Crossclaim against the Coldwell Defendants put the respective Realtors on notice that the Griffiths seek damages for independent tortious acts committed against the Griffiths, *i.e.*, the Realtors' respective failure to catch the alleged buildability issue and warn the Griffiths of it prior to the sale closing.  Though Paragraph 2 of the respective prayers for relief in the Third-Party Complaint and Crossclaim seek an award of attorneys' fees and costs if the Abads are "entitled to judgment against Dr. and Mrs. Griffith," paragraph 5 of the prayers for relief make separate, unqualified requests for attorneys' fees and costs that are not tied to the Griffiths' liability to the Abads.  Thus, we conclude that the Griffiths sufficiently pled Uyemura Claims for attorneys' fees and costs against the Realtors, which are direct claims, not in the nature of indemnity or contribution.  Accordingly, we conclude that the Circuit Court erred in dismissing those claims under HRS § 663-15.5(d)(2).

For these reasons, the Circuit Court's August 26, 2024 Final Judgment, April 7, 2021 Order Granting MAI Petition, and January 3, 2023 Order Granting Coldwell Petition are affirmed in part and vacated in part; this case is remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, December 12, 2024.

On the briefs:

Calvert G. Chipchase,
Christopher T. Goodin,
Trisha H.S.T. Akagi,
Mallory T. Martin,
(Cades Schutte)

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

11

and

Dennis W. Potts,
Trevor S. Potts,
for Defendants/Crossclaim Defendants/
Crossclaimants/Third-Party
Plaintiffs-Appellants.

Arthur H. Kuwahara,
(Kim & Kuwahara),
(on the Answering Brief only in CAAP-23-0000015)
for Defendants/Crossclaimants/
Crossclaim Defendants-Appellees.

Calvin E. Young,
David J. Hoftiezer,
Deirdre Marie-Iha,
(Goodsill Anderson Quinn & Stifel),
for Third-Party Defendants-Appellees.